GORDON SILVER
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gordonsilver.com
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
[Proposed] Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-11-24633-<br>Chapter 11 |
| MER SOLEIL, LLC, | |
| Debtor. | |
| | Date:  OST Pending<br>Time:  OST Pending |

## OMNIBUS DECLARATION OF GREGORY ROSEBECK IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS

I, Gregory Rosebeck, hereby declare as follows:

1.     I am over the age of 18 and am mentally competent and I make this declaration in support of Debtor's *Emergency Motion For Entry of an Interim Order Pursuant to Bankruptcy Rule 4001(b) and LR 4001(b): (1) Preliminarily Determining Extent of Cash Collateral and Authorizing Interim Use of Cash Collateral by Debtor; and (2) Scheduling a Final Hearing to Determine Extent of Cash Collateral And Authorizing Use of Cash Collateral by Debtor* (the "Cash Collateral Motion") and the *Emergency Motion Pursuant to 11 U.S.C. §§ 105(a) and 366 for an Order Determining that Adequate Assurance Has Been Provided to the Utility Companies* (the "Utility Motion," together with the Cash Collateral Motion, the "Motions").[1]

2.     I am a general partner of Roses Investments Limited Partnership, the manager of Debtor, and also a minority member of Debtor.  Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my personal knowledge of Debtor's operations and

---

[1] All capitalized, undefined terms shall have the meaning ascribed to them in the applicable Motion.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

finances, information learned from my review of relevant documents and information supplied to me by other members of Debtor's management and Debtor's business and legal advisors.  If called upon to testify as to the content of this Declaration, I could and would do so.

3.    Attached hereto as **Exhibit "1"** is a summary of projected income and expenses for the three and a half-months following the Petition Date (the "Budget"), which concludes on December 31, 2011.

A.    **Debtor's Operations**

4.    Debtor is a Nevada limited liability company owned by Roses Investments Limited Partnership and me.  Roses Investments Limited Partnership is Debtor's manager.

5.    Debtor owns and operates El Capitan Professional Park, a 2.22 acre professional park with four buildings, which is located near the intersection of El Capitan Way and Flamingo Road in Las Vegas, Nevada, and more specifically identified as APNs 163-17-415-005 and 163-17-415-005 (the "Property").

1.    **4005 and 4035 El Capitan Way.**

6.    Two single tenant buildings are constructed on the front parcel, being APN 163-17-415-006.

7.    The first building (the "Salon Building") is located at 4005 El Capitan Way, Las Vegas, Nevada 89147, and is leased by Hill of Grace LLC d/b/a Eaze Salon & Spa ("Eaze Salon").[2]

8.    The second building (the "Mirus Building") is located at 4035 El Capitan Way, Las Vegas, Nevada 89147, and is leased by Mirus Interactive, LLC.

9.    The collective monthly lease revenue from Mirus Interactive, LLC and Hill of Grace, LLC is approximately $13,190.

. . .

. . .

---

[2] Upon the prior tenant's vacation from the Salon Building, I began operating Eaze Salon in order to enable Debtor to seek to meet its monthly loan payments to Standard.  Without such operation, between the fourth quarter of 2010 and August 31, 2011, both the Salon Building and the Mirus Building would have been unoccupied and Debtor would have been unable to service any of its loan obligations to Standard during such period.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

2.      **4015 and 4025 El Capitan Way.**

10.     One single tenant building and one multi-tenant building are constructed on the back parcel, being APN 163-17-415-005.

11.     The first building (the "MKA Building") is located at 4025 El Capitan Way, Las Vegas, Nevada 89147, and is leased by Madsen, Kneppers & Associates.

12.     The second building (the "McNair/First Interstate Building") is located at 4015 El Capitan Way, Las Vegas, Nevada 89147, and is leased by First Interstate Bankcard Corporation, a division of Data Genesis Corporation, and McNair and Associates, Chtd.

13.     The collective monthly lease revenue from Madsen, Kneppers & Associates, First Interstate Bancard Corporation, and McNair and Associates, Chtd. is approximately $23,165.

B.      **Debtor's Secured Loan Obligations.**

1.      **Standard Loan.**

14.     On or about October 23, 2007, Standard Insurance Company, an Oregon corporation ("Standard")[3] made a loan to Debtor, Roses Investments Limited Partnership, Jennifer Rosebeck, Gregory Rosebeck, William Gayler, Goven Cross, LLC, a Nevada limited liability company, and William Gayler, Trustee of The William A. Gayler Separate Property Trust, u/t/d dated November 1, 1994 (collectively, the "Co-Makers") in the original principal amount of $1.95 Million (the "Standard Loan").

15.     The Standard Loan is evidenced by that certain Note dated as of October 23, 2007, executed by Co-Makers in favor of Standard in the original principal amount of the Loan (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Standard Note"), a true and correct copy of which is attached hereto as **Exhibit "2."**

. . .

---

[3] I have been informed by Standard that it previously transferred certain of its interest in the Standard Loan Documents to: (i) Liberty Life Assurance Company; (ii) Liberty Mutual Fire Insurance Company; (iii) Liberty Mutual Insurance Company; (iv) Peerless Insurance Company; and (v) Mutual of Omaha Life Insurance Company, and has recently transferred its interest in the Standard Loan Documents to: (i) 4005 and 4025 El Capitan Way LLC; and (ii) UM Holdings IV, LLC (collectively, the "Standard Assignees"); however, neither I nor any of Debtor's other professionals have been provided with documentation verifying the validity of such transfers. The term "Standard" as utilized herein, shall, to the extent applicable, include the Standard Assignees.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

16.     The Standard Loan is secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of October 23, 2007, recorded on December 5, 2007, in the Official Records of the Clark County, Nevada Recorder in Book No. 20071205 as Instrument No. 0003803 (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Standard Deed of Trust"), granting to Standard a security interest in the real property commonly known as 4005 and 4035 El Capitan Way, Las Vegas, Nevada 89147, APN 163-17-415-006, the Eaze and Mirus Buildings.[4]  A true and correct copy of the Standard Deed of Trust is attached hereto as **Exhibit "3."**

17.     The Standard Loan is further secured by that certain Assignment of Lessor's Interest in Leases dated as of October 23, 2007, recorded on December 5, 2007, in the Official Records of the Clark County, Nevada Recorder in Book No. 20071205 as Instrument No. 0003804 (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Standard Assignment"),[5] a true and correct copy of which is attached hereto as **Exhibit "4."**

18.     Debtor is informed and believe that Standard contends that on the Petition Date, the outstanding obligation under the Standard Note was approximately $1.9 Million (the "Standard Secured Debt").

19.     Debtor believes that the value of the Eaze and Mirus Buildings approximates the Standard Secured Debt as of the Petition Date.[6]

---

[4] For the avoidance of doubt, Standard was not granted a security interest in the real property located at 4015 and 4025 S. El Capitan Way, Las Vegas, Nevada 89147 (the MKA and McNair/First Interstate Buildings), APN 163-17-415-005.

[5] The Standard Note, Standard Deed of Trust, Standard Assignment, and all other agreements, documents, and instruments executed in connection with the Standard Loan are referred to collectively herein as the "Standard Loan Documents."

[6] Two additional deeds of trust, having second and third priority, have been recorded against APN 163-17-415-006. On September 12, 2008, Gloria Buonaccorsi, recorded that certain Short Form Deed of Trust and Assignment of Rents Second Position in the Official Records of the Clark County, Nevada Recorder in Book No. 20080912 as Instrument No. 0003948 (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Buonaccorsi Deed of Trust"), a true and correct copy of which is attached hereto as **Exhibit "5."** Additionally, on March 3, 2009, R.J. Loerwald Construction Company and/or Robert J. Loerwald recorded that certain Short Form Deed of Trust and Assignment of Rents Second Position in the Official Records of the Clark County, Nevada Recorder in Book No. 201000317 as Instrument No. 0003777 (together with all modifications, extensions, renewals, and replacements thereof, if any, the "R.J. Loerwald Deed of Trust"), a true and correct copy of which is attached hereto as **Exhibit "6."** Debtor disputes the validity, priority, and extent of each of these liens.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

4

2.     **The Security National Loan.**

20.     On or about December 2, 2009, Security National Life Insurance Company ("Security National") made a loan to Debtor in the original principal amount of $1.35 Million (the "Security National Loan").

21.     The Security National Loan is evidenced by that certain Promissory Note dated as of December 2, 2009, executed by Debtor in favor of Security National in the original principal amount of the Security National Loan (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Security National Note").

22.     The Security National Loan is secured by that certain Deed of Trust dated as of December 2, 2009 recorded on December 9, 2009, in the Official Records of the Clark County, Nevada Recorder in Book No. 20091209 as Instrument No. 0003706 (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Security National Deed of Trust"), granting to Security National a security interest in the real property commonly known as 4015 and 4025 El Capitan Way, Las Vegas, Nevada 89147, APN 163-17-415-005, the MKA and McNair/First Interstate Buildings.[7]   A true and correct copy of the Security National Deed of Trust is attached hereto as **Exhibit "7."**

23.     The Security National Loan is further secured by that certain Assignment of Rents dated as of December 2, 2009, recorded on December 9, 2009, in the Official Records of the Clark County, Nevada Recorder in Book No. 20091209 as Instrument No. 0003707 (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Security National Assignment"),[8] a true and correct city of which is attached hereto as **Exhibit "8."**

24.     The Security National Note matured in or about March 2010.  Since the maturity date, Debtor has continued to tender monthly payments to Security National in accordance with the terms of the Security National Note, while seeking to negotiate a new loan with Security

---

[7] For the avoidance of doubt, Security National was not granted a security interest in the real property located at 4005 and 4035 S. El Capitan Way, Las Vegas, Nevada 89147 (the Eaze and Mirus Buildings), APN 163-17-415-006.

[8] The Security National Note, Security National Deed of Trust, Security National Assignment, and all other agreements, documents, and instruments executed in connection with the Security National Loan are referred to collectively herein as the "Security National Loan Documents."

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

5

National. Prior to the Petition Date, Security National had provided Debtor with a commitment letter for a new loan involving a three year term.

25.     On the Petition Date, the outstanding obligation under the Security National Note was approximately $1.346 Million (the "Security National Secured Debt").

26.     Debtor believes that the value of the MKA and McNair/First Interstate Buildings exceeds the Security National Secured Debt as of the Petition Date.

**C.     The Barrett/Loerwald Loan.**

27.     On or about February 27, 2009, Martin Barrett ("Barrett") made a loan to Debtor, Jennifer Rosebeck, and me in the original principal amount of $338,000 (the "Barrett/Loerwald Loan").

28.     The Barrett/Loerwald Loan is evidenced by that certain Note Secured by Deed of Trust (Straight Note) as of February 27, 2009, executed by Debtor, Jennifer Rosebeck, and me in favor of Barrett in the original principal amount of the Loan (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Barrett/Loerwald Note"), a true and correct copy of which is attached hereto as **Exhibit "9."**

29.     The Barrett/Loerwald Loan is secured by that certain Short Form Deed of Trust and Assignment of Rents dated as of February 27, 2009, recorded on March 3, 2009, in the Official Records of the Clark County, Nevada Recorder in Book No. 20090303 as Instrument No. 0003565 (together with all modifications, extensions, renewals, and replacements thereof, if any, the "Barrett/Loerwald Deed of Trust"),[9] granting to Barrett a security interest in, among other real property, the real property commonly known as 4015 and 4025 El Capitan Way, Las Vegas, Nevada 89147, APN 163-17-415-005, the MKA and McNair/First Interstate Buildings, as well as all rents, issues, and profits thereof.[10] A true and correct copy of the Barrett/Loerwald Deed of Trust is attached hereto as **Exhibit "10."**

---

[9] The Barrett/Loerwald Note, Barrett/Loerwald Deed of Trust, and all other agreements, documents, and instruments executed in connection with the Barrett/Loerwald Loan are referred to collectively herein as the "Barrett/Loerwald Loan Documents."

[10] For the avoidance of doubt, Barrett was not granted a security interest in the real property located at 4005 and 4035 S. El Capitan Way, Las Vegas, Nevada 89147 (the Salon and Mirus Buildings), APN 163-17-415-006.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

6

30.    Debtor is informed and believes that Barrett's rights and obligations under the Barrett/Loerwald Note and Deed of Trust were assigned to Leroy Loerwald ("Loerwald").

31.    The Barrett/Loerwald Note matured in or about March 2010.  Since the maturity date, Debtor has continued to tender interest-only monthly payments to Loerwald in accordance with the terms of the Barrett/Loerwald Note.

32.    On the Petition Date, the outstanding obligation under the Barrett/Loerwald Note was approximately $338,000 (the "Barrett/Loerwald Secured Debt").

33.    Debtor believes that the value of the MKA and McNair/First Interstate Buildings exceeds not only the Security National Secured Debt, but also the Barrett/Loerwald Secured Debt as of the Petition Date.

**D.    The Events Necessitating The Bankruptcy Filing.**

34.    Debtor's default under the Standard Note was a direct result of a loss of rental income in the Mirus Building in or about August of 2009.  After the loss of rental income, Debtor utilized its other revenue and cash reserves to fund the monthly Standard loan payment until such funds were depleted.

35.    As a result of the loss of income, Debtor sought to negotiate alternate payment terms with Standard.  However, such negotiations were not fruitful and on May 6, 2011, Standard commenced non-judicial foreclosure proceedings against the property securing the Standard Loan, being the Mirus and Salon Buildings, by causing a Notice of Default and Election to Sell under Deed of Trust to be recorded on May 6, 2011 in the Official Records of the Clark County, Nevada Recorder in Book No. 20110506 as Instrument No. 0003186, and re-recorded on May 12, 2011 in the Official Records of the Clark County, Nevada Recorder in Book No. 20110512 as Instrument No. 0002667.

36.    Debtor again sought to reach a consensual restructuring of the Standard Note.  Despite being able to fully lease the Mirus Building by September 1, 2011, Standard declined Debtor's efforts to restructure the Standard Note.  As Standard would not consider a restructuring of the Standard Note, other consensual resolutions were explored, during which time Standard agreed to continue its September 6, 2011 foreclosure sale.  A consensual

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

7

1    resolution could not ultimately be reached prior to the continued September 16, 2011 foreclosure

2    sale and Standard denied Debtor's request for a further continuance of the foreclosure sale to

3    permit negotiations to continue, thereby leaving Debtor with no other option than to seek

4    Chapter 11 protection in order to preserve the value of Debtor's property for the benefit of all of

5    its creditors and tenants.

6    **E.    Debtor's Current Financial Condition.**

7        37.    Debtor's revenue is derived primarily from its leases of the Salon, Mirus, MKA,

8    and McNair/First Interstate Buildings.  Prior to September 1, 2011, the Mirus Building was

9    unoccupied.  However, as of the Petition Date, the Mirus Building, as well as Debtor's three

10   other buildings were fully leased at market rents.

11       38.    As set forth more fully in Debtor's budget, Debtor's total monthly revenue

12   exceeds $36,357, while its operating expenses total, on average, less than $6,600, thereby

13   resulting in net monthly revenue of approximately $29,757 prior to debt service.  Debtor is thus

14   cash-flow positive prior to its debt service.

15       39.    Further, as more fully set forth in the Budget, Debtor anticipates increasing its

16   cash balance from less than $7,500 on the Petition Date to in-excess-of $76,000 by December 31,

17   2011, after tendering aggregate adequate protection payments of $16,846 to Security National

18   and Loerwald.

19   **F.    The Cash Collateral Motion.**

20       40.    On the Petition Date, Debtor had cash and cash equivalents located on the

21   Property as of the Petition Date (the "Cash on Hand") and cash in its bank account as of the

22   Petition Date (the "Deposit Accounts") in the approximate aggregate sum of $7,417 (the

23   "Unencumbered Cash"), none of which was under the control of Standard or Security National.

24       41.    Debtor cannot meet its ongoing post-petition obligations unless it has the

25   immediate ability to use its Unencumbered Cash and the cash generated or received by Debtor

26   from and after the Petition Date (the "Post-Petition Cash").  In the absence of such use,

27   immediate and irreparable harm will result to Debtor, its estate, and its creditors, and will render

28   an effective and orderly reorganization of Debtor's business impossible.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

8

42.     An integral aspect of maintaining Debtor's business operations is Debtor's ability to use its Unencumbered Cash and its Post-Petition Cash to maintain a sufficient level of working capital in order to pay ordinary course obligations such as those to its vendors, utilities, taxing authorities, insurance, and to pay for necessary ordinary course property maintenance and projects.

43.     Each expense included within the Budget is a necessary expense to maintain, preserve, and/or operate the Property, which is the sole means of generating revenue, thereby increasing the value of the Property and providing the resources for Debtor to reorganize.

44.     Debtor believes that the value of Standard's collateral approximates the value of the Standard Secured Debt as of the Petition Date, that the value of Security National's collateral exceeds the value of the Security National Secured Debt as of the Petition Date, and that Loerwald's collateral exceeds the value of the Barrett/Loerwald Secured Debt as of the Petition Date. Debtor also believes that given all of the circumstances regarding Standard, Security National, and Loerwald's respective collateral, such collateral will not diminish in value.

**G.      The Utility Motion.**

45.     In the ordinary course of its business, Debtor incurs utility expenses, including but not limited to electricity, sewer, water, and waste management.  These utility services are provided by the utilities (as such term is used in Section 366, collectively, the "Utility Providers") including, but not limited to those listed on **Exhibit "2"** to the Utility Motion (the "Utility Service List").

46.     On average, Debtor spends approximately $1,125 each month on utility costs.  As of the Petition Date, Debtor believes it is substantially current on utility payments as set forth in the Utility Service List that came due on or before the Petition Date.  Additionally, on the Petition Date, certain of Debtor's utilities held prepetition deposits.

47.     Preserving utility services on an uninterrupted basis is essential to Debtor's ongoing operations and, therefore, to the success of its reorganization.  Any interruption of utility services, even for a brief period of time, would disrupt Debtor's ability to continue servicing its customers, thereby negatively affecting customer relationships, revenues, and profits.  Such a

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

9

1    result could jeopardize Debtor's reorganizations efforts and, ultimately, Debtor's value and

2    creditor recoveries.  It is therefore critical that utility services continue uninterrupted during its

3    Chapter 11 Case.

4          48.      Debtor intends to pay post-petition obligations owed to the Utility Providers in a

5    timely manner.  Debtor expects that it will have ample liquidity, based upon cash on hand and

6    cash flow from operations, to pay its post-petition obligations to its Utility Providers.

7    Specifically, Debtor's operations are currently cash flow positive prior to debt service, and

8    Debtor presently has approximately $7,417, constituting more than one-month's utility charges,

9    either in cash on hand or in its bank accounts as of the Petition Date.

10         49.      To provide additional assurance of payment for future services to the Utility

11   Providers, Debtor has allocated the collective sum of $562.50 (representing half of one-month's

12   average utility expense) to be made available from Debtor's cash flow for the first two weeks for

13   payment of utility deposits (the "Utility Deposit Reserve").  The Utility Deposit Reserve will

14   provide still further assurance of future payment, over and above the Utility Providers' existing

15   deposits and Debtor's ability to pay for future utility services in the ordinary course of business

16   based upon their existing cash on hand and cash flow from operations (collectively, with the

17   Utility Deposit Reserve, the "Proposed Adequate Assurance").  Debtor submits that the Proposed

18   Adequate Assurance provides protection well in-excess-of that required to grant sufficient

19   adequate assurance to the Utility Providers.

20         50.      The proposed Procedures are necessary for Debtor to carry out its reorganization

21   efforts.  If they are not approved, Debtor could be forced to address a host of requests by its

22   Utility Providers in a disorganized manner during the critical first weeks of its reorganization.

23   Moreover, Debtor could be blindsided by a Utility Provider unilaterally deciding--on or after the

24   thirtieth day following the Petition Date--that it is not adequately protected and discontinuing

25   service or making an exorbitant demand for payment to continue service.  Discontinuation of

26   utility service, particularly electricity, could essentially shut down operations, and any significant

27   disruption of operations could put the Debtor's reorganization efforts in jeopardy.

28   . . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2

10

1       I declare under penalty of perjury of the laws of the United States that these facts are true

2  to the best of my knowledge and belief.

3       DATED this 20th day of September, 2011.

4                        /s/ Gregory Rosebeck

5                        GREGORY ROSEBECK

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102992-002/1327620_2